## Connell, et al. v. Harper, Admrx., et al.

## Cantrill v. Same.

(Decided March 11, 1924.)

## Appeals from Scott Circuit Court.

1. Descent and Distribution—Lands Held "Derived" by Infant from Mother Through Great-aunt.—Where a woman before marriage executed deed conveying her interest in land to an aunt who in turn conveyed the interest to the woman for life at her death to go to her children, held that a child of the woman by a subsequent marriage "derived" the remainder interest by gift from its mother within the meaning of Kentucky Statutes, section 1401, relating to descent of property of an infant, the aunt being but the vehicle by and through whom the fee in the remainder was transmitted from the woman to her child.

2. Executors and Administrators—Statute as to Bonds on Sale of Property Held Without Application in Suit for Settlement of Estate.—Civil Code of Practice, section 493, requiring execution of a bond on sale of land of wife, infant, or insane person, has no application in an action for settlement of estate of a deceased person and sale of lands for the purpose of paying his debts.

3. Executors and Administrators—Purchaser Cannot Complain Advertisement Did Not State Amount for which Sale was to be Made.—Purchaser of Land, in a sale made in a suit to settle a decedent's estate, cannot complain that the advertisement of the master commissioner failed to state the amount for which the sale was to be made, under Civil Code of Practice, section 696, though such failure might furnish grounds why a sale should be set aside on the motion of the debtor, or some interested party.

4. Executors and Administrators—Land May be Sold in which Infant has Undivided Interest.—In a suit to settle a decedent's estate and to pay his debts, the court has jurisdiction to sell land in which an infant has a share as an undivided interest.

5. Executors and Administrators—Has Right to Order Sale of More Land than Necessary to Pay Debts of Decedent where Infants Interested.—In the absence of proof of indivisibility, the court has a right to order sale of more land than necessary to pay debts of decedent in a suit to settle his estate, though infants are interested.

BRADLEY & BRADLEY, ROBERT T. CROWE and WM. J. CROWE for appellants.

FORD & FORD, JAMES BRADLEY, JAMES B. FINNELL, JR., L. F. SINCLAIR and ROBERT CROWE for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON—
Affirming.

In 1896 the will of John F. Payne was probated in
the Scott county court. The third and fourth paragraphs
of that instrument read as follows:

"Having received from the estate of my father-
in-law, Thomas Smarr, eight thousand dollars, I give
and devise to my wife, Carrie Payne, one (100) hun-
dred acres of land where I now live including my
dwelling house and all the improvements appurten-
ant thereto to be laid off to the best advantage, as
also all my household and kitchen furniture and car-
riage and pair of horses or mules to be hers, abso-
lutely and in fee simple, with the reservation, never-
theless that should said land and appurtenances be
worth at her death or at any time sell for more than
said sum of eight thousand dollars, then any excess
over and above that amount is to be equally divided
amongst my five children by her, hereinafter named.

"4. I will and direct that the whole and entire
residue of my estate of every description shall be
equally divided amongst my said five children to-wit:
Lida Payne, John F. Payne, Jr., Dosia Payne, Ella
Payne, and Carrie Payne, both in kind and amount
in value and that the share or portion falling to
each shall be by my executors invested in real estate
or in good and safe paying stocks for the benefit of
such child and to be held by them respectively dur-
ing natural life but with no power to charge, alien-
ate, transfer or in anywise to incumber his or her
part but only to have the rents, issues and profits
thereof during life and at their death to go to their
children respectively in fee simple and should any
one or more of my said children die without bodily
issue the portion of such child or children so dying
to go to the survivors in equal shares and to be in-
vested in real estate or stocks as above directed and
any property also which I may inherit or otherwise
acquire from my father to be divided and invested
in the same manner as above."

His widow, Carrie Payne, lived until 1902. Her
estate consisting of both real and personal property was

devised to her children and grand children.   The relevant clause of her will reads:

"I devise another one-fifth of the residue of my estate to my grand children, Sallie Harper and Whitley Payne, jointly during their natural lives and at their death to go to their children; if either of them should die without children his or her interest is to go to the survivor.

"If both of them should die without living children their interest is to go in the same way as is above directed in the case of John F. Payne and Wm. L. Payne dying without issue . . . in trust for the purposes hereinafter mentioned her undivided one-tenth interest in the following described tract of land . . .

"To have and to hold to the said Lida F. Payne in trust for the purpose of conveying said land to the party of the first part for and during her natural life with remainder to her children or their descendants.

"If she leaves a widower one-third to go to him during his life and at his death to go as the other two-thirds is limited to go but if she shall die without children or their descendants to her brother, W. Payne Harper, or his children but if he will be dead and have no children then to the heirs of John F. Payne, deceased. . . .

"That for and in consideration of one dollar, cash in hand paid, the receipt of which is hereby acknowledged and in execution of the trust imposed upon me by the deed heretofore entered into by the said Sallie B. Harper to me, I hereby sell and convey to the party of the second part for and during her natural life and at her death to go to her children or their descendants; if she leaves a widower one-third to him for life, and after his death to go as provided for the other two-thirds, and if she shall die without children or their descendants, then to her brother, W. Payne Harper, or his children or their descendants, but if at her death the said W. Payne Harper shall be dead without children or their descendants then to go to the heirs-at-law of John F. Payne, deceased, an undivided one-tenth interest in the following described tract of land. . . . A part of which was owned by the widow of said John

F. Payne at the time of her death. To have and hold to the party of the second part during her life and the remainder to her children or their descendants and if she leaves a widower one-third to him during his life and at his death to go to her children and if she shall die without children or their descendants then to her brother, W. Payne Harper, or his children and their descendants, and if he dies without children or descendants then to the heirs of John F. Payne, deceased. Party of the second part may sell and convey said property and re-invest the proceeds in other real estate under the same limitations, the purchaser to look to the re-investment, together with all the privileges and appurtenances thereunto belonging and appertaining, it being her interest which she derived from the estate of John F. Payne, deceased, and his widow, Mrs. Carrie Payne.''

The farm consisted of about 600 acres. He had five children. To the widow he gave 100 acres with appurtenances and certain personal property, all to be of a value not to exceed $8,000.00; to his five children he gave the use and benefit of the remaining 500 acres for life only with remainder to their children. The farm was never divided except that the widow's 100 acres was laid off to her. This, however, was later used with the balance of the farm. One daughter, Lida Payne, died intestate and without issue, never having married. Dosia Payne married Wallace Harper and became the mother of two children, Payne Harper and Sallie Harper, the latter became Sallie Harper Connell. Later Dosia Payne Harper died survived by her husband, Wallace Harper and her two children. At her death her two children, Payne and Sallie Harper, became the owners of one-half of a one-fifth in the 500 acre tract willed to them by their grandfather, John F. Payne. One-half of one-fifth is one-tenth, or about 50 acres when considered in relation to the 500 acre tract. The death of Dosia Payne, daughter of the testator, John F. Payne, without issue and unmarried, augmented the share of the other four children, and Sallie Harper, afterwards Sallie Harper Connell, benefited thereby.

Following the devolution of the lands it would appear that after the death of Dosia, in 1905, Sallie Harper, afterwards Sallie Harper Connell, was the owner of

one-tenth for life in the entire 600 acres acquired in the following manner:

(1) One-tenth of 500 acres in fee from her grandfather, John F. Payne, which she had converted into a life estate in herself by deeds hereafter cited;

(2) One-tenth of 100 acres for life by the will of her grandmother, Carrie Payne;

(3) And if the 100 acres exceed $8,000.00 in value at the time of the death of Carrie Payne, then a life interest in the 100 acres up to $8,000.00 and a fee in the balance, which had also been converted into a life estate in herself by the deeds hereafter cited.

The remainder interest in this one-tenth of 600 acres went as follows:

(1) By the deed of Lida Payne to Sallie Harper (1905) one-tenth of 500 acres to Sallie Harper (afterward Connell) for life and remainder to her children, but if she left a widower one-third to him for life and remainder to her children;

(2) By the will of Carrie Payne, the grandmother, one-tenth of 100 acres for life with remainder to her children;

(3) But if it be held that the will of John F. Payne limited the value of this 100 acres to $8,000.00, then she devised only one-tenth of $8,000.00 to Sallie Harper for life, and the excess went under the will of John F. Payne, one-tenth in fee to Sallie Harper, which by the deed from her to Lida Payne (1905) and from Lida Payne to her, gave her a life estate with remainder to her children, but if she left a widower one-third to him for life and remainder to her children.

In 1920 Sallie Harper Connell died intestate, leaving an infant son, Junius, and her husband surviving, as was also her father, Wallace Harper. Junius, the six-year-old son, became the owner of his mother's entire interest in the 600 acre tract of land. At the age of nine he died survived by his father, Thomas G. Connell, and by his grandfather, Wallace Harper. His father, appellant here, contends that he inherited the entire interest of his infant child, while Bessie L. Harper and the other appellees insist that Wallace Harper, the grandfather of the infant, was the sole heir of the infant, Junius Connell, especially that property to which he derived title from his mother and grandfather. These divergent

contentions are both based upon section 1401, Kentucky Statutes, which reads:

"If an infant dies without issue, having the title to real estate derived by gift, devise or descent from one of his parents, the whole shall descend to that parent and his or her kindred as hereinbefore directed, if there is any; and if none, then in like manner to the other parent and his or her kindred; but the kindred of one shall not be so excluded by the kindred of the other parent, if the latter is more remote than the grandfather, grandmother, uncles and aunts of the intestate and their descendants."

Construing this section, the appellant insists that the lands in question were not "derived" by the infant Junuis "by gift, devise or descent from one of his parents;" but was vested in him by the deed of his great aunt, Lida F. Payne, of date November 20, 1905, and which reads in part:

"That for and in consideration of one dollar, cash in hand paid, the receipt of which is hereby acknowledged and in execution of the trust imposed upon me by the deed heretofore entered into by the said Sallie B. Harper to me, I hereby sell and convey to the party of the second part for and during her natural life and at her death to go to her children or their descendants; if she leaves a widower one-third to him for life and after his death to go as provided for the other two-thirds and if she shall die without children or their descendants then to her brother, W. Payne Harper, or his children or their descendants, but if at her death the said W. Payne Harper shall be dead without children, or their descendants, then to go to the heirs-at-law of John F. Payne, deceased, an undivided one-tenth interest in the following described tract of land, . . . a part of which was owned by the widow of said John F. Payne at the time of her death. To have and hold to the party of the second part during her life and the remainder to her children or their descendants and if she leaves a widower, one-third to him during his life, and at his death to go to her children and if she shall die without children or their descendants then to her brother, W. Payne Harper, or

his children and their descendants, and if he dies without children or descendants then to the heirs of John F. Payne, deceased. Party of the second part may sell and convey said property and reinvest the proceeds in other real estate under the same limitations, the purchaser to look to the reinvestment; together with all the privileges and appurtenances thereunto belonging and appertaining, it being her interest which she derived from the estate of John F. Payne, deceased, and his widow, Mrs. Carrie Payne.''

On the same day the mother of Junius executed a deed to Lida F. Payne, an unmarried woman, conveying to her ''in trust for the purpose hereinafter mentioned her undivided one-tenth in the following described tract of land . . . the whole of said contract containing six hundred acres; it being the same land formerly owned by John F. Payne deceased, a part of which was owned by the widow of John F. Payne at the time of her death.''

The foregoing deeds considered together clearly evince a purpose on the part of the grantors and the grantees to divest Salle B. Harper of the fee in the lands which she held under her grandfather's will, and to invest her with merely a life estate therein with remainder to her children, if any. She was then unmarried but undoubtedly about to enter into that relation. The conveyance was probably intended to secure herself a home which could not be subjected to the debts or liabilities of her husband and which could not be encumbered or conveyed, and to vest her children, if any, with a fee in remainder. Appellant's contention that the infant, Junius, did not receive the land by gift, devise or descent from his mother, is literally true if we do not look to the substance but merely view the form. If however, we turn our eyes from the shadow to the substance we at once see that the trustee, Lida Payne, was but a vehicle through and by which the fee in remainder was transmitted from Sallie to her child. Manifestly it was a gift from the mother to her child. Having arrived at this conclusion the statutes, section 1401, copied above, made the grandfather, Wallace Harper, the heir of Junius as respects that part of the land which the infant's mother received under the will of her grandfather, Payne, and the chancellor correctly adjudged Junius Connell the owner in fee of an undivided one-eighth part of the

entire 600 acre tract of land described in the petition
subject to the life estate of the defendant, Thos. G.
Connell, in and to one-third or so much thereof as said
Junius Connell acquired directly from Sam B. Connell;
that Junius acquired title to all his interest in said land
by gift and descent from his mother, Sallie B. Connell,
except as to a one-tenth part of such interest as Carrie
Payne, widow of John F. Payne, took in the 100 acres
allotted to her by the will and which lands mentioned
came to Junius under the will of Carrie Payne. As
Junius died in infancy without issue all the said undi-
vided one-eighth interest in said 600 acres of land passed
to his grandfather, Wallace Harper, subject to the life
estate of the infant's father, Thos. G. Connell, in a one-
third part thereof, except an undivided one-tenth part of
the interest which Carrie Payne, widow of John F.
Payne, took in the 100 acre tract willed to her. At the
death of Wallace Harper the interest inherited by him
from his grandchild, Junius, passed to his children, the
appellees, Bessie L. Harper, etc. The judgment on this
branch of the case must be affirmed.

In the second case, styled J. C. Cantrill v. Bessie L.
Harper, Admrx., etc., the regularity of the sale at which
Mr. Cantrill became the purchaser is attacked. The first
exception is based upon the failure of the court to require
a bond under section 493, Civil Code, before judgment
was entered. That section of the Code requires the
"guardian of each infant, the committee of each person
of unsound mind, and the husband or next friend of each
married woman, must, before the sale is ordered, execute
bond to the infant, infant married woman, or person of
unsound mind, with at least two sureties, worth not less
than double the value of the estate to be sold, in sub-
stance, that the guardian, committee or trustee will
faithfully discharge all his duties as such and comply
with the judgment and orders of the court in the action
and will account for, pay and deliver all money or prop-
erty due or belonging to the ward, person of unsound
mind or married woman whenever required by the
court." This bond must be indorsed, approved by the
court and recorded with the order of sale.

As this was an action for the settlement of the es-
tate of a deceased person and the sale of lands for the
purpose of paying his debts, section 493, Civil Code, has
no application. In the case of Oldham v. McElroy, 134

Ky. 454, we said, in considering a question similar to this:

"It is claimed, too, that the judgment in the Stivers suit was void because the bond required by section 493, Civil Code of Practice, was not executed on behalf of the infants. The suit to sell the ancestor's land for his debts is excepted from the requirement of the Code concerning that bond. A lien should have been, and by law is, retained on the land for the infant's share of the excess above the intestate's debts, until bond is executed on behalf of the infants as required by sections 493 and 497 Civil Code of Practice."

We therefore conclude that the sale was not invalid for the reason that no bond was executed under section 493 of the Civil Code.

The second exception to the report of sale is stated as follows: Should the advertisement of the master commissioner in a sale made in a suit to settle the decedent's estate, state the amount for which the sale is to be made?

Section 696, Civil Code, in part provides, "Every sale made under an order of court must be public, . . . and the notice of sale must state for what sum of money it is to be made." Relying upon this provision of the Code the purchaser insists that the failure of the advertising to state the amount of money to be raised by the sale renders the sale irregular and invalid. This exact question was passed on in the case of Williams v. Owensboro Savings Bank, 153 Ky. 789, where we said:

"The exception that the sale was not advertised as required by law is not available to the purchaser as a ground for setting aside the sale, although it might furnish good grounds why a sale should be set aside on the motion of the debtor or some interested party. It might also be a ground for exception when made by a receiver if it appeared that the failure to advertise as required by law resulted in the property being sold at a sacrifice or at less than it would have brought if legally advertised. But the receiver in this case simply makes the exception that the sale was not advertised as required by law without showing that the failure to advertise prejudiced in any manner the interests of the estate."

This exception must also be overruled.

The next exception relied upon by the purchaser is stated as follows:

"Has the court jurisdiction to sell land in which an infant has a share as an undivided interest?"

We have held in a number of cases including Auxier v. Auxier, 180 Ky. 518, that the court may sell the undivided interest of an infant in lands inherited from his ancestor to pay the ancestor's debt. In the latter case we said:

"We still adhere to the soundness of those opinions. In the instant case the heirs of John B. Auxier, with his administrator, asserted the claim against S. B. Auxier, which was afterwards reported by the master commissioner and confirmed by the court. The guardian in his petition also asked for the payment of S. B. Auxier's debts, and while the pleadings were somewhat irregularly drawn so as to make the action a settlement suit under the provisions of section 428 of the Civil Code, we think they were sufficient for that purpose, and when land was ordered sold for the payment of S. B. Auxier's debts, no greater interest should have been sold than that which he owned. This the court did, and the same is true with reference to his undivided interest in the mineral under the 200 acre tract located in Johnson county.

"It is true that in the three cases referred to no infants appear to be involved. In this case the infants stand in the shoes of their father whose undivided interest was sold for his debt, and we can discern no sufficient reason for withholding the application of the rule because the debtor may perchance be dead and leave infants surviving him. The reasons for not disturbing the interest of the other joint owners in the land are as potent in the one case as they are in the other."

The last exception relied upon by the purchaser reads:

"In the absence of proof of indivisibility has the court a right to order a sale of more land than necessary to pay the debts of the decedent in a suit to settle his estate, where infants are interested?"

This question has also been decided adversely to the contention of the purchaser Cantrill. In the case of West v. McDonald, 113 S. W. 872, where the same question was presented we held: "Appellants cannot object to the judgment upon the grounds presented by exceptions 1 and 2. If true, none of them would render the judgment void; and besides they cannot be relied on by a mere purchaser of the property at decretal sale. Whether they could be relied on by the defendant Cunningham we need not decide, for no such objections are being urged by her. Our examination of the petition convinces us that it does state a cause of action, and was sufficient to support the judgment. While no proof seems to have been taken on the question as to whether the lot was divisible, the petition alleges that it was not and this was not denied. Moreover, the lot, though containing two houses, is a small one, the houses not valuable, and on the face of the record we will not presume that the circuit court acted unadvisedly in decreeing a sale of the property as a whole, but, on the other hand, will take it for granted that the petition and mortgage filed as an exhibit so described the lot as to enable the court to determine its indivisibility. Sears v. Henry, 13 Bush 413. Obviously appellants were not prejudiced by the sale of the lot as a whole, and it does not lie in their mouths to complain that it was so sold. Cowler v. Kellam, 4 Ky. Law Rep. 988." There are many other cases to the same effect.

The judgment of the lower court holding that the sale was regular and proper and that by the sale the purchaser, J. C. Cantrill, was invested with a good fee simple title to the undivided interest in the lands sold; and further that the purchaser, Cantrill, be required to comply with the terms of the sale, appears to be sustained by both the facts and the law, for which reason the judgment is affirmed.

Judgment affirmed. Whole court sitting.